UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS ANDERSON, et al.,

Case No.:  16-CV-03684 (JMF)

Plaintiffs,

-against-

RIVER GREENE CONSTRUCTION GROUP, LLC d/b/a
RIVER GREENE CONSTRUCTION GROUP, HARVEY
ABRAHAMS and JOE KRANZLER,

Defendants.

## DEFENDANTS' PRE-TRIAL PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants RIVER GREENE CONSTRUCTION GROUP, LLC d/b/a RIVER GREENE

CONSTRUCTION GROUP ("River Greene"), JONATHAN KRANZLER ("Kranzler") and

HARVEY ABRAHAMS ("Abrahams," together with River Greene and Kranzler, collectively,

the "Defendants"), by their attorneys Robinson Brog Leinwand Greene Genovese, & Gluck,

P.C., respectfully submit their Pre-Trial Proposed Findings of Fact and Conclusions of Law, and

state as follows:

DEFENDANTS' PROPOSED FINDINGS OF FACT

1.      Plaintiff Luis Andersen ("Andersen") is an adult individual residing in Brooklyn,

New York.  Third Amended Complaint (the "Complaint") (Doc. Entry No. 56), ¶ 8.

2.      Plaintiff Luis Alvarez ("Alvarez") is an adult individual residing in Brooklyn,

New York.  *Id.*, ¶ 11.

3.      In or about August 26, 2016, defendant River Greene was formed by defendant

Kranzler and two investor groups as a limited liability company organized pursuant to the New

York Limited Liability Company Law. *See* Affidavit of Jo Kranzler, sworn to on June 14, 2017 ("Kranzler Aff.") ¶ 2; *see also* Defendants' Proposed Trial Exhibit ("Defs' Tr. Ex. _") 1.

4.      Pursuant to River Greene's operating agreement, Kranzler had a 30% member interest in River Greene, and the two investor groups, ACM Contracting, LLC and BI Development, LLC each had a 35% member interest. Kranzler Aff. ¶ 3; Defs' Tr. Ex. 1 at Schedule A.

5.      Defendant Abrahams is the manager of ACM Contracting, LLC. *Id.* ¶ 4; s*ee also* Affidavit of Harvey Abrahams, sworn to on June 14, 2017 ("Abrahams Aff.") ¶ 4; Defs' Tr. Ex. 1 at p. 20.

6.      Abrahams was not and is not an owner of River Greene. Kranzler Aff. ¶ 4; Abrahams Aff. ¶ 5.

7.      River Greene was formed to provide interior build-outs for commercial office space in existing buildings in New York City. Kranzler Aff. ¶ 5.

8.      River Greene secured its first project in or around November 2013 to build out the Department of Motor Vehicle's lower Manhattan office space. *Id.* ¶ 7

9.      River Greene was not a construction company. River Greene did not and never did employ any construction workers. Therefore, River Greene had to retain a construction company in order to provide the actual construction services, including construction workers for its build-out projects. *Id.* ¶ 8.

10.      River Greene retained Bringing Best Management, LLC ("BBM"), a construction company, to act as an independent contractor and provide the construction services, labor and expertise for the DMV project as well as all other projects that River Greene was able to secure in the future. *Id.* ¶ 9.

{00862796.DOC;1 }

11.     Mr. Curtis Antoine ("Antoine") was an employee of BBM and ran its construction operations.  Antoine oversaw, controlled, and was otherwise in charge of the construction of all of River Greene's projects.  In order for Antoine to be able to provide the necessary construction services and labor to complete its projects, River Greene provided Antoine with a full set of the projects' plans, along with its bid sheet.  *Id*. ¶ 10.

12.     Antoine hired (and fired) all the construction workers that were needed by BBM for the build-out projects that River Greene was able to secure.  *Id*. ¶ 11.

13.     The DMV project, River Greene's initial project, was successful, and this business model – in which River Greene developed and maintained the business relationships, and hired and paid BBM and Antoine to run the construction of the projects, was utilized throughout River Greene's existence.  *Id*. ¶ 12.

14.     As River Greene was able to secure more projects, Antoine needed to hire more workers.  As a result, in or about November 2014, Antoine turned to a separate construction company to provide additional workers.  One of the construction workers provided was plaintiff Luis Alvarez ("Alvarez").  *Id*. ¶ 13.

15.     Antoine liked the work that Alvarez did, and shortly thereafter he hired Alvarez as an employee of BBM.  *Id*. ¶ 14.

16.     By the end of 2014, the owner of BBM and Antoine had a falling out and Antoine took over the ownership of the construction for the River Greene projects.  At this point in time, Alvarez became an employee of Antoine's.  Despite BBM no longer being present, the business model remained the same.  River Greene would develop and secure the projects, and Antoine would oversee and control the construction of the build-out projects.  River Greene was never involved in the actual construction process, including the hiring, firing and supervision of the

- 3 -

construction workers, including Plaintiffs.  Antoine was always in charge – first on behalf of

BBM, and starting in and around 2015, on behalf of himself.  Antoine charged River Greene a

$2,000 weekly fee for his services, excluding his employees' pay.  *Id*. ¶ 15.

17.      In early 2015, Alvarez introduced Antoine to plaintiff Anderson, and Antoine

hired Anderson as a painter.   Alvarez and Anderson continued to work on River Greene projects

through and including April 2016.  *Id*. ¶ 16

18.      In or about April 2016, Antoine fired plaintiffs Alvarez and Anderson.

19.      All of River Greene's projects were located locally in New York City.  *Id*. ¶ 18.

20.      Additionally, the far majority of supplies purchased for its projects were

purchased by River Greene at local suppliers, such as Feldman Lumber located in Brooklyn,

New York.  *Id*. ¶ 19.

Payment to BBM and Antoine Employees

21.      Early on, in 2013 and for most of 2014, Antoine would provide River Greene the

hours that BBM's and his construction employees worked for him on River Greene projects.

River Greene would than issue a weekly check, based on the hours provided by Antoine, to BBM

and then to Antoine in the later portion of 2014 (when BBM was no longer involved in River

Greene projects).  Upon information and belief, Antoine would than pay his employees,

including plaintiff Alvarez, in cash.  River Greene was not responsible for directly paying

Alvarez.  *Id*. ¶ 20.

22.      In 2014, Antoine usually paid BBM's employees every Friday for the prior

Monday to Sunday work week.  In late 2014, 2015 and 2016, Antoine usually paid his

employees, including Plaintiffs Alvarez and Anderson every Friday for the prior Monday to

Sunday work week.  *Id*. ¶ 21.

23.     By late 2014, a mobile application was utilized in which Antoine's construction workers would check-in and out of River Green projects via the application, which River Greene was than able to download in order to verify the hours worked. *Id*. ¶ 22.

24.     River Greene only utilized the mobile application in order to verify Antoine's construction worker's time, including Plaintiffs' time, instead of having to rely solely on Antoine's time records. River Greene did not otherwise keep any employee records because it never had any employees.[1] *Id*. ¶ 23.

25.     Weekly, starting in late 2014, defendant Kranzler would download and review the time and hours on the mobile application, deduct a half-hour of time for lunch, and email Antoine to confirm Antoine's employees' hours for the prior week. Every once in a while there were some discrepancies because a worker would check-in but fail to check-out or they would fail to check-in all-together. For instance, some days when a worker did in fact work, zero hours were credited, and other days, a worker may have been credited with working twenty-four hours. Antoine would verify the time, and based on Antoine's verification, River Greene would issue a weekly check, in late 2014 to BBM and then Antoine, and in 2015 and 2016 directly to Antoine. Antoine would than pay his employees, including plaintiffs Alvarez and Anderson. River Greene was never responsible for directly paying Plaintiffs. *Id*. ¶ 24.

26.     Copies of the mobile app time records for Plaintiff Alvarez are set forth as composite Defs' Tr. Ex. 2. *Id*. ¶ 25.

27.     Copies of the mobile app time records for Plaintiff Anderson are set forth as composite Defs' Tr. Ex. 3. *Id*. ¶ 26.

---

[1] For approximately a year, between late 2014 and 2015, when River Greene was able to turn a profit, I was provided a weekly salary that was considered an advance on any capital distribution that I was entitled to as a member of River Greene.

28.     Copies of the weekly emails between defendant Kranzler and Antoine that verified the hours worked by Plaintiffs for BBM and/or Antoine for the preceding week on River Green projects are set forth as composite Defs' Tr. Ex. 4.  *Id.* ¶ 27.

29.     Copies of the weekly checks payable to Antoine by River Greene are set forth as composite Defs' Tr. Ex. 5.  *Id.* ¶ 28.

30.     A copy of the 1099 issued to BBM in 2014, indicating that River Greene paid BBM $522,991.70 in 2014, is set forth as Defs' Tr. Ex. 6.  *Id.* ¶ 29.

31.     A copy of the 1099 issued to Antoine in 2014, indicating that River Greene paid Antoine $107,357.14 in 2014, is set forth as Defs' Tr. Ex. 7.  *Id.* ¶ 30

32.     A copy of the 1099 issued to Antoine in 2015, indicating that River Greene paid Antoine $1,029,612.48 in 2015, is set forth as Defs' Tr. Ex. 8.  *Id.* ¶ 31

33.     A copy of the 1099 issued to Antoine in 2016, indicating that River Greene paid Antoine $495,949.68 in 2016, is set forth as Defs' Tr. Ex. 9.  *Id.* ¶ 32.

River Greene, Kranzler And Abrahams Were *Not* Plaintiffs' Employer

34.     Antoine hired and fired Plaintiffs.    *Id.* ¶ 33.

35.     Antoine supervised and controlled Plaintiffs' work schedules and their work conditions. *Id.* ¶ 34.

36.     Antoine determined the rate and method of payment for Plaintiffs.  *Id.* ¶ 35.

37.     Antoine maintained and verified Plaintiffs' time records.  *Id.* ¶ 36.

38.     Antoine had complete operational control of the construction and the construction workers, including Plaintiffs that he hired to work on River Greene projects. *Id.* ¶ 37.

39.     Other than occasional walkthroughs by defendant Kranzler to gauge the status of a project in order to report back to an owner, Defendants had no involvement with the actual

- 6 -

construction of the projects that Antoine hired and paid Plaintiffs to work on, nor did River

Greene, Abrahams or Kranzler have any contact with Plaintiffs. *Id.* ¶ 38.

DEFENDANTS' PROPOSED CONCLUSIONS OF LAW

      40.     Plaintiffs commenced this action against Defendants pursuant to the Fair

Standards Act ("FLSA") 29 U.S.C. §§201-19, and New York Labor Law ("NYLL"), §§ 190-99

& 650-65.

      41.     The court has subject matter jurisdiction of this action.  29 U.S.C. § 216(b), 28

U.S.C. § 1337 and 28 U.S.C. § 1331.

      42.     The claims arising under New York law are so related to the FLSA claims that

they form part of the same case or controversy, and are therefore within the supplemental

jurisdiction of the court. 28 U.S.C. § 1367.

    I.   Potential Liability

    a.   *Employer Liability*

      43.     FLSA liability applies to "employers," which the statute defines to include "any

person acting directly or indirectly in the interest of an employer in relation to an employee." 29

U.S.C. § 203(d).  Under the FLSA, employers have an obligation to pay overtime compensation

to employees who are "engaged in commerce or the production of goods for commerce" or

"employed in an enterprise engaged in commerce or in the production of goods for commerce."

29 U.S.C. §§ 206(a), 207(a).  Under the latter classification of qualified employees, a defendant

is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the

defendant is an enterprise (1) that has employees engaged in commerce or in the production of

goods for commerce, or that has employees handling, selling, or otherwise working on goods or

materials that have been moved in or produced for commerce by any person; and (2) whose

{00862796.DOC;1 }

annual gross volume of sales made or business done is not less than $500,000.00. 29 U.S.C. §

203(s)(1)(A). *Hernandez v. NJK Contrs., Inc.*, No. 09-CV-4812 (RER), 2015 U.S. Dist. LEXIS

57568, at *106-07 (E.D.N.Y. May 1, 2015).

44.     Furthermore, it is clear from the language of the statute that, for enterprise

coverage under the FLSA to apply, the enterprise must be engaged in commerce  under the

statute and must gross over $500,000 annually.  *See* 29 U.S.C. § 203(s)(1)(A)(i)-(ii).  Both

prongs must be met.  *Id.*

45.     River Greene had no employees, all of its build-out projects were located locally

in New York City and the majority of its supplies were purchased locally in New York.  *See*

Kranzler Aff. ¶¶ 18, 19, 23.  Plaintiffs have not shown that River Greene is engaged in

commerce as that term is defined by the statute, and therefore River Greene is not covered under

the statute as being an "employer."  *See e.g., Sandoval v. Fla. Paradise Lawn Maint., Inc.,* No.

07-22298-CIV, 2008 U.S. Dist. LEXIS 31872, at *19 (S.D. Fla. Apr. 17, 2008) (holding local

contractor was not an "enterprise" as plaintiffs failed to establish the interstate commerce prong

of the statute).

    b.  *Individual Defendants' Liability*

46.     The Second Circuit has determined that under the statute, an employer may

include an individual owner who exercises a sufficient level of operational control in the

company's employment of employees. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-111 (2d Cir.

2013).   Mere ownership interest in a corporate defendant employer is insufficient, standing

alone, to establish individual FLSA liability.  *Id.* at 109.

47.     In order to determine whether the alleged individual employer possessed the

power to control a worker, the "economic reality" test is employed, which examines factors,

{00862796.DOC;1 }

including: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Cal.Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (internal quotation marks omitted)). *See also Xue Lian Lin v. Comprehensive Health Management, Inc.*, No. 08 Civ. 6519, 2009 WL 976835, at *2 (S.D.N.Y. Apr. 9, 2009).

48.     To state a claim under the FLSA, a plaintiff must set forth facts showing that the individual defendant "possessed the power to control the workers in question." *Id*.

49.     Here it is clear from the evidence that Antoine was in charge of and controlled Plaintiffs' employment.  Antoine was Plaintiff's employer and not Defendants.

50.     Defendant Abrahams was not an owner of River Greene and had no relationship with or contact with Plaintiffs.  Abrahams certainly did not hire or fire Plaintiffs.  He did not supervise nor control Plaintiffs' work schedules or conditions, determine the rate and method of payment, or maintain employment records.  *See* Abrahams Aff. ¶¶ 6-11.  Abrahams is not individually liable under the statute.

51.     Defendant Kranzler is also not individually liable.  His only tangential involvement with Plaintiffs was that he verified their hours so that River Greene could properly pay BBM and/or Antoine.  There is no credible evidence that Kranzler hired, fired, controlled, or supervised Plaintiffs or Plaintiff's work schedule and conditions of employment.  *See* Kranzler Aff. ¶¶ 23, 24, 33-38.  Therefore, Kranzler is also not individually liable.

II.  <u>Potential Damages</u>

52.     While the Court has determined that Defendants are not liable to Plaintiffs, for the fullness of the records, the Court nonetheless should analyze the potential damages established by the evidence.

  a.  *Unpaid Wages*

      i.     Overtime Wages

53.     FLSA and NYLL require employers to "compensate employees who work over forty hours per week with overtime pay at the rate of one and one-half times the regular rate." *Wong v. Hunda Glass Corp.,* 09 Civ. 4402(RLE), 2010 U.S. Dist. LEXIS 62653, *2 (S.D.N.Y. June 23, 2010) (*citing* 29 U.S.C. §§ 207(a)(1)).  "Even when wages exceed the minimum prescribed by Congress, [employers] must respect the statutory policy of requiring the employer to pay one and one-half times the regularly hourly rate for all hours actually worked in excess of [forty]."  *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 674 (S.D. N.Y. 2011) quoting *Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 42, 65 S.Ct. 11, 89 L.Ed. 29 (1944).

54.     An employee bringing an action for unpaid overtime wages under the FLSA has the burden of proving that he performed work for which he was not properly compensated. *Grochowski v. Phoenix Constr., Ypsilon Constr. Corp.,* 318 F.3d 80, 87 (2d Cir.2003) (*quoting Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)).  Employers are required to "make, keep, and preserve" records of employee wages, hours, and employment conditions.  29 U.S.C. § 211(c).  If an employer fails to keep such records, the plaintiff may meet his burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Grochowski* 318 F.3d at 87.


      ii.    Unpaid Regular Wages

55.    NYLL § 652(1) requires employers to pay statutorily-determined minimum wages.  If an employee is paid by his employer less than the minimum wage to which he is entitled under NYLL§ 652(1), the employee may recover the amount of any such underpayment, together with costs and reasonable attorney's fees.  NYLL § 663(1).

56.    From the evidence presented, Defendants have established that Plaintiffs were paid by Antoine for every hour that they worked on River Greene related projects.  In addition, Defendants' time records, specifically the mobile application time records for Plaintiffs included in Defendants' composite Trial Exhibits 2 and 3, and the weekly emails between Kranzler and Antoine included in Defendants' composite Trial Exhibit 4 establish not only that Plaintiffs worked far less than the 63 hours per week claimed in the Complaint (*see* ¶¶ 29, 41), but rather sufficiently establish the actual hours worked by Plaintiffs.  *See* Defs' Tr. Exhs. 2, 3 and 4.

   b.  *Liquidated Damages*

57.    The FLSA provides for liquidated damages equal to the unpaid wages and overtime recovered.  29 U.S.C. § 216(b).  An employer may avoid liquidated damages if he can show that he acted "in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA."  *Id*. § 260.  The burden is on the employer to demonstrate good faith.  *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).  To meet this burden, an employer must have taken active steps to ascertain and comply with the FLSA's requirements. *Id*.   NYLL provides for liquidated damages on identical terms to the FLSA.  NYLL § 198 (1-a), 663(1).

58.    Recently, the Second Circuit affirmatively stated that because "the NYLL and FLSA liquidated damages provisions are identical in all material respects, serve the same functions, and redress the same injuries," plaintiffs may not recover "stacked" damages under

- 11 -

both the FLSA and the NYLL.  *See Chowdhury v. Hamza Express Food Corp., et al.*, No. 15-3142 (2d Cir. Dec. 7, 2016).

59.     Because Plaintiffs have failed to establish that any of the Defendants were their "employer," neither River Greene, Abrahams or Kranzler is liable to Plaintiffs for liquidated damages.

*c.   Wage Notice and Wage Statements Under the NYLL*

60.     Under the NYLL, employers must provide employees with wage and hour notices. NYLL §195(1)(a).   Specifically, the notices must inform the employee, in both English and the employee's primary language, of the rate of pay.

61.     An employee who does not receive such notices can recover damages of $50 per workday, for each day the notice has not been provided, up to a statutory maximum of $5,000. NYLL §198(1-b).

62.     The NYLL also requires employers to provide wage statements with each payment of wages, which must include, among other things, the rate of pay and basis thereof, and "allowances, if any, claimed as part of the minimum wage."  NYLL §195(3).

63.     An employee who does not receive such statements can recover $250 per week of violation, up to a maximum of $5,000.  NYLL §198(1-d).

64.     River Greene (nor Abrahams or Kranzler) did not employ Plaintiffs.  Indeed, River Greene had no employees.  Therefore, River Greene was not required to provide wage notice and wage statements to Plaintiffs.  Therefore, Defendants cannot be and are not liable to Plaintiffs for these statutory penalties.

Dated: June 19, 2017
      New York, New York

Respectfully submitted,

ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK, P.C.


By:   /s/ Andrew B. Zinman___

      Andrew B. Zinman
      875 Third Avenue, 9th Floor
      New York, NY  10105
      Tel:  (212) 603-6300
      abz@robinsonbrog.com
      *Attorneys for the Defendants*

{00862796.DOC;1 }