## JACOB ARONAUER, ESQ.
Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

August 28, 2017

**Via ECF**
The Honorable Jesse Furman
United States District Court
40 Foley Square
New York, New York 10007

      Re:  Anderson et al v. River Greene Construction et al.
          16-cv-03684 (JMF)

      This Court ordered that I show cause why sanctions should not be imposed (dkt 121). The decision by the Court to issue this order was based primarily, if not entirely, on the quality of my work product. As acknowledged by this Court in a prior decision, the quality of an attorney's work product should ordinarily not serve as a basis for sanctions. At no point did I act in bad faith, engage in actions that unduly delayed this case or mislead either the Court or my adversaries.

      In determining whether sanctions are warranted, I request that the Court take into consideration the following. First, through my efforts, my clients obtained a favorable settlement that was approved by this Court. My work, as discussed in more detail below, enabled my clients to receive this positive outcome. Second, on June 28, 2017, the Court made clear it was not satisfied with my performance (dkt 93). After being placed on notice of the Court's dissatisfaction, there were no further issues with respect to my submissions. Third, after the Court's order on June 28, 2017, I made adjustments to my practice so that my office would be able to spend more time on each case.[1]

      I ask the Court to note that in 12 years of practice I have never been sanctioned. As I corrected my behavior after the Court's ruling on June 28, 2017, I request the Court not sanction me so I can avoid a permanent blemish on my record.

**APPLICABLE LAW**

      The threshold to justify sanctions "is extremely high." *See United States v. Seltzer*, 227 F.3d 36, 41 n.2d (2d Cir. 2000). To justify sanctions, "the court must find that the very temple of

---

[1] The Court directed that I respond by a letter motion. If the Court believes it is appropriate, I am willing to put any factual statements and documents herein in a declaration.

justice has been defiled by the sanctioned party's conduct." Id. (internal citations and quotations omitted). The Second Circuit reviews any decision to sanction a party or attorney to ensure that the decision to sanction "is made with restraint and discretion." Id. at 39 *quoting Schlaifer Nance & Co. 910 v. The Estate of Andy Warhol,* 194 F.3d 323, 334 (2nd Cir. 1999); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (2000) ("Because of their very potency, inherent powers (to sanction) must be exercised with restraint.").

An attorney whom the court proposes to sanction "must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter," and "*must be forewarned of the authority under which sanctions are being considered*, and given a chance to defend himself against specific charges." *See Ted Lapidus, S.A. v. Vann*, 112 F.3rd 91, 97 (2d Cir. 1998) (emphasis added). Thus, "at a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the *source of authority* for the sanction being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense" (emphasis added); *see also Schlaifer Nance & Co v. The Estate of Warhol,* 194 F.3d 323, 334 (2nd Cir. 1999).

As noted by Chief Judge McMahon,

as a general matter, a court should not impose sanctions on a party or attorney
pursuant to its inherent authority unless it finds, by clear and convincing
evidence, that the party or attorney knowingly submitted a materially false
or misleading pleading, or knowingly failed to correct false statements,
as part of a deliberate and unconscionable scheme to interfere with the Court's
ability to adjudicate the case fairly.

*See Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu*, 2015 U.S. Dist. LEXIS 90652, at **46-47 (S.D.N.Y. June 19, 2015).

Defrauding the Court occurs when an individual "lies to the court and his adversary intentionally, repeatedly and about issues that are central to the truth-finding process." *See McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp.2d 440, 445 (S.D.N.Y. 2002).

Poor work product, by itself, is rarely grounds for sanctions. *See Scrilla Hill Entm't Inc. v. Dupree*, 2016 U.S. Dist. LEXIS 138346 (S.D.N.Y. Oct. 2016) (this Court holding that while there was "much to criticize" of the attorney's work product, it did not rise to the level of sanctions); *see also Gulf Oil/Cities Service Tender Offer Litigation v. Chevron U.S.A, Inc.*, 1990 U.S. Dist. Lexis 9082, at **19-20 (S.D.N.Y. July 20, 1990) (finding that despite the fact that both attorneys "acted juvenile and unprofessional" at the deposition, sanctions would not be imposed--rather, the attorneys were admonished); *see also Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 109 (2nd Cir. 2013) (holding that the District Court incorrectly "couched its conclusions in terms of what 'any competent' attorney would have done and extensively discussed the attorney's admittedly incompetent practice in other areas.").

Under Rule 11, an attorney can be sanctioned for misrepresenting facts. *See Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2nd Cir. 2013). In most instances, opposing counsel will initiate a sanctions motion. Id. In those situations, the opposing counsel must serve a notice of the sanctions claim with 21 days notice on the accused attorney prior to moving for sanctions. Id. The purpose behind this rule is to give the attorney time to correct the asserted misconduct. No such notice was given to me. Indeed, this Court has never contended that I misrepresented facts.

A court may, under Rule 11, initiate sanctions proceedings *sua sponte*. Fed. R. Civ. P.11(c)(3). In *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003), the Second Circuit considered the appropriate standards for *sua sponte* sanctions. In *Pennie*, the Second Circuit held that to issue sanctions *sua sponte* without providing the attorney an opportunity to correct or remove the challenged submission amounted to a finding of contempt. Thus, *sua sponte* sanctions in such a circumstance could only be issued upon a finding of contempt. *See Muhammad*, 732 F.3d at 108-109 (2d Cir. 2013) *citing Pennie*, 323 F.3d. at 91 (2nd Cir. 2003). This Court does not assert that my work product rose to the level of contempt.

Attorneys can also be sanctioned pursuant to 28 U.S.C. § 1927. Section 1927 provides in relevant part that "any attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See* 28 U.S.C. § 1927. The imposition of sanctions under § 1927 is appropriate only "when there is a finding of conduct constituting or akin to bad faith." *See Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997). Before making this determination, a court is required to find "clear evidence that [1] the offending party's claims were entirely meritless and [2] the party acted for improper purposes." *Revson v. Cinque & Cinque P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (internal quotation omitted). The Court has not indicated that I acted in bad faith or for improper purposes. The Court's approval of the settlement shows Plaintiffs' claims had merit.

Under Rule 16, a Court is permitted to issue sanctions if an attorney "fails to appear at a scheduling or other pretrial conference" or "fails to obey a scheduling or other pretrial order." Fed. R.Civ. P.16(f)(1). In determining whether a sanction is merited, the court does not need to find that a party acted in bad faith. *See* Charles Alan Right, Arthur R. Miller, Marty Kay Kane & Richard L. Marcus, *6A Federal Practice and Procedure* §1531 (3d ed. 2010) (footnote omitted). The Advisory Committee on Federal Civil Rules noted that Rule 16 was created "to encourage forceful judicial management." However, this Rule is not intended to "let loose a strange and capricious new beast." *See Salahuddin v. Harris*, 782 F.2d 1127, 1133 (2nd Cir. 1986) (ruling, among other things, that Rule 37(b) sanctions require the violation of an explicit court order and that implied orders do not justify sanctions under Rule 16(f)).

To sanction a party under Rule 16 for failure to follow a court's pre-trial orders, the order must be explicit and clear that it is mandatory. *See Ashlodge, Ltd. v. Hauser*, 163 F.3d 681, 683-84 (2nd Cir. 1998) (in vacating the sanctions order the Second Circuit noted that "the word 'should' rather than, for example, 'shall' is not clearly mandatory. 'Should' could mean 'must,' but can also mean 'it would be desirable.'").

## BACKGROUND

**<u>Plaintiffs Received A Favorable Settlement</u>**

As set forth in the joint letter from counsel for the parties to the Court requesting approval of the settlement agreement, the total damages (inclusive of liquidated damages and notice violations) were $45,000.00 (dkt 120). As this Court is undoubtedly aware, it is commonplace in FLSA settlements to have long payouts. Here, Plaintiffs will receive, in one lump sum, $37,000.00. Furthermore, even though the retainer agreement called for me to receive 1/3 of any recovery plus reimbursement for any expenses, I only requested 21% of the total net recovery. The Court approved this settlement agreement (dkt 122). The fact that I was able to obtain a favorable settlement is particularly noteworthy in light of the credit history of the main Defendant, Joe Kranzler. Mr. Kranzler has multiple liens against him and has previously filed for bankruptcy protection.[2]

The settlement agreement ensures to a high degree of certainty that Defendants will adhere to the terms of the settlement agreement. All Defendants signed an affidavit of confession of judgment for $45,000.00 (more than the $37,000.00 settlement amount), along with reasonable attorney's fees incurred in the event of a default. *See* dkt 121, Exhibit A (settlement agreement).

My work performance played a vital role in obtaining this settlement. First, I engaged in independent factual research on the Defendants. Through this research, I was able to find evidence which I believed undercut some of Defendants' more important defenses, namely: 1) that River Greene Construction, through Joe Kranzler, did not employ individuals and 2) that Harvey Abrahams was only a silent partner in River Greene Construction. Specifically, the prior lawsuits I examined demonstrated that Abrahams was more than just a "silent partner" at River Greene and Kranzler admitted that River Greene employed construction workers.

On July 5, 2017, this office requested permission from the Court to file a motion to preclude (dkt 94). In this motion, I pointed out that Defendants (in both their initial disclosures as well as in their document responses) failed to provide relevant documents that pertained to whether Joe Kranzler was in fact Plaintiffs' employer. I previously had to seek the Court's intervention with respect to Defendants' initial disclosures (dkt 58). In addition, I showed the Court that in Defendants' document responses they refused to produce the same documents they were now seeking to submit as their pre-trial exhibits. The very next day the after I filed my motion to preclude, the parties jointly filed a motion to stay requesting that the Court not rule on any outstanding motions (dkt 95). Shortly thereafter, a settlement was reached. This was not a coincidence.

---

[2] Out of respect for Mr. Kranzler's privacy, I have not referenced the specific information obtained showing Mr. Kranzler's credit difficulties. If the Court wants this information, I will provide it in the declaration previously offered.

**Amended Complaints**

On July 4, 2016, I asked permission from this Court to file an amended complaint (dkt 008). The Court provided a memo endorsement the next day on July 5, 2016 (dkt 009). On July 10, 2016, I filed the amended complaint (dkt 010).

On September 2, 2016 I requested permission from the Court to file a second amended complaint (dkt 015). The basis for the request to file the second amended complaint was that I had "confused the names of Plaintiffs Luis Anderson and Luis Alvarez in the fact section with respect to their dates of employment." Id. The Court, without criticism, granted me leave to file a second amended complaint (dkt 016). The Court ordered me to file the second amended complaint by September 4, 2016. Id. Consistent with the Court's order, I filed the second amended complaint on September 4, 2016 (dkt 017).

On September 7, 2016, the amended complaint was bounced back by the Electronic Case Filing System ("ECF") because I incorrectly listed the wrong filer for the pleading (dkt 018). As a result, I had to seek the Court's permission for a second time to file the second amended complaint (dkt 019). Once again, the Court granted me permission to file an amended complaint (dkt 020). I again filed the second amended complaint on September 9, 2016 (dkt 021). The complaint was again bounced back by ECF because I failed to include "check" boxes for both Plaintiffs prior to the filing of the amended complaint. Just one day after being informed of this error, I correctly filed the second amended complaint (dkt 022).

The errors with respect to the filing of this amended complaint (dkt 16-22) were not done in bad faith. The errors, while admittedly sloppy, did not cause the case to be delayed because Defendants had not yet responded to this action. At no point did the Court express discontent with respect to the filing of the first amended complaint (dkt 16-22).

On January 31, 2017, I asked permission to file a third amended complaint (dkt 51). The reason to file the third amended complaint (which was discussed in my letter to the Court requesting permission to amend) was that I had obtained the name of individual Defendant Joe Kranzler (dkt 51). Defendants did not oppose my request to submit a third amended complaint (dkt 051). The Court, without criticism, granted me permission to file the third amended complaint (dkt 54).

**Pre-Trial Submissions Which Were One Day Late**

On May 17, 2017, the Court ordered that the parties submit pre-trial materials by June 19, 2017 (dkt 80). The joint pre-trial statement was filed one day late on June 20, 2017. Plaintiffs' Proposed Findings of Fact and Conclusions of Law were also filed one day late on July 20, 2017. In addition, on June 23, 2017, Plaintiffs' list of the parties they intended to cross-examine were one day late—although they were submitted on the same day as the Defendants' list.

Shortly after the filing of these documents, the Court issued a memo order stating that it was displeased with the late submission of these documents (dkt 93). The Court also stated that

Plaintiffs' counsel would *not* be sanctioned for the failure to timely submit these documents (dkt 93). Specifically, the Court stated in its "*Order Granting Letter Motion to Continue*" as follows:

> The Court is neither impressed nor happy with Plaintiffs' counsel's failure to comply with deadlines. But in view of the fact that the submissions were made *only one day late*, *the Court will not impose any sanctions* on the basis of counsel's tardiness...That said, the Court will not tolerate further failure to abide by the Court's orders and schedule—and will not hesitate to impose appropriate sanctions (up to and including dismissal) if problems *reoccur* (emphasis added). *See* dkt 93.

After the one-day belated pre-trial filings,, as discussed below, I met all of the Court's subsequent deadlines. Specifically: (a) on June 20, 2017, the Court ordered that I show cause why the case should not be dismissed no later than June 23, 2017 (dkt 87): I provided Plaintiffs' response one day before the deadline on June 22, 2017 (dkt 88); (b) on June 22, 2017, I timely asked permission from the Court to submit an extension to file a response/reply to Defendants' pre-trial submissions (dkt 090); (c) on June 27, 2017, I timely filed a motion to preclude Defendants from admitting into evidence various documents (dkt 92); (d) on July 13, 2017, I timely filed a motion to withdraw as attorney (dkt 103); and (e) on August 10, 2017, the parties timely jointly filed a proposed settlement agreement (dkt 120).

**Proposed Findings of Fact and Conclusions of Law**

On May 17, 2017, the Court issued an order pertaining to the pretrial submissions (dkt 80). As part of the Order, the Court required that the parties file Proposed Findings of Fact and Conclusions of Law. The Court, in its order, did not require a page minimum. The Court did not require the parties to cite case law. Rather, the Court required that the "Proposed Conclusions of Law shall include all law that the parties wish to submit to the Court." *See* Dkt. 80.

Plaintiffs' Findings of Facts were brief and concise for the following reasons. First, this was a straightforward wage and hour case. My clients believed that certain individuals were their employers (the individual Defendants); and they were not paid time and one half for all the overtime they worked. Second, the Findings of Facts were also short because minimal discovery had taken place (there were no depositions). Third, my clients, because they were paid in cash and did not receive any documents from their employers, possessed no documents in support of their case. Fourth, my clients were not going to testify with respect to the prior lawsuits of Defendants. I did not want to discuss the prior lawsuits in my Findings of Fact because I wanted to save these points for cross-examination.

In its order, the Court did not require the parties to cite cases in its Conclusions of Law. Rather, the Court required the parties to "include all law that the parties wish to submit to the Court." I provided the law that I wanted the Court to consider in its Conclusions of Law, namely, the New York Wage Theft Prevention Act; the Fair Labor Standards Act; and the New York Labor Law.

In retrospect, I should have included more detail in Plaintiffs' Findings of Fact and Conclusions of Law. Similarly, I should have submitted case law in support of Plaintiffs'

Conclusions of Law in addition to the statutory references.[3] The Court, though, explicitly barred Plaintiffs' counsel from the opportunity to submit new Findings of Fact and Conclusions of Law (dkt 89).

After the Court's order expressing its extreme displeasure as to the fact that Plaintiffs' counsel did not cite case law, Plaintiffs' counsel cited case law in all future motions. I cited case law in Plaintiffs' motion to continue as to why the case should not be dismissed for submitting the pre-trial materials one day late (dkt 89), Plaintiffs' motion to preclude (dkt 94), in counsel's motion to withdraw as attorney for Luis Anderson (dkt 103), the motion requesting that the Court approve the settlement agreement (dkt 120) and this motion's order to show cause why sanctions should not be imposed.

**Decision to Use Prior Declarations**

The Court ordered that the parties "shall serve, but not file, affidavits constituting the direct testimony of each trial witness." The Court did not state when the affidavits had to be created or if they had to be created solely for the purpose of trial. For the reasons set forth, Plaintiffs' counsel elected to use the same declarations that I was planning on submitting in support of Plaintiffs' motion for a default judgment. First, Plaintiff Anderson, at that time, had cut off contact with my office.[4] Due to the fact that Plaintiff Anderson had by then ceased communicating with my office, his prior declaration was the best I could do under difficult and unusual circumstances. I was concerned that if I made a representation to the Court that I was having trouble contacting Mr. Anderson, it would hurt my ability to successfully negotiate on behalf of Mr. Anderson, as well as Plaintiff Alvarez's behalf.

Second, I believed that the prior declarations, while not perfect, were sufficient for Plaintiffs to make out a *prima facie* case. I took this position for three reasons. First, my clients had no documents in support of their claims for unpaid overtime due to the fact that they received no documents from Defendants during the course of their employment. Second, there was no deposition testimony that could have been inserted into my clients' affidavits.

Third, and arguably most importantly, I had used a similar declaration in support of damages in my default judgment motion in *Aguaysa v. Eureka Nails & Spa Corp. et al.*, 15-cv-05284 (AMD) (RER), United States District Court, Eastern District of New York. This similar declaration is found at dkt 22 in the *Aguaysa* matter. In *Aguaysa*, Judge Donnelly rendered a judgment for the Plaintiff for over $80,000.00. A copy of Judge Donnelly's decision is found at dkt 27 in *Aguaysa*.[5] My reasoning was that if such a declaration was sufficient to obtain a default judgment in *Aguaysa*, it could similarly enable my clients to establish a *prima facie* case and receive a favorable monetary outcome in this matter.

---

[3] As discussed in more detail below, to ensure that this type of problem does not occur in the future, I have made changes with respect to how I administer my practice.

[4] I disagree with the Court's characterization in the order to show cause of my office's attempts to contact Anderson. My office had made repeated efforts to get in contact with Plaintiff Anderson. The Court's Order to Show Cause implies that I am at fault for Plaintiff Anderson's lack of communication with this office. This is not correct. *See* dkt 096.

[5] Upon request, I will provide copies of the referenced documents in *Aguaysa*.

**Changes to My Practice**

My practice has grown significantly quicker than I expected when I started my own law firm in 2013. There have been growing pains. On June 28, 2017, after I received the Court's order (dkt 93), I realized I needed to make changes to my practice. After this Court's order, I have become more selective with respect to taking on new cases. I have also hired a full time employee and requested that my two part-time paralegals take steps to ensure that at least one of them is in the office each day. I am confident that these changes will lead to better work product so as to prevent these issues from reoccurring.

## ARGUMENT

### A. As the Attorney Has Not Been Explicitly Notified of the Legal Basis for Why He is at Risk for Sanctions, it is Respectfully Submitted That Sanctions Should Not Be Imposed

The Order to show cause from this Court did not state the statute or other basis under which sanctions may be issued. While the Court's order does make references to certain issues with respect to my work product, the Court does not state under which statute sanctions may be imposed. It is well settled that for a decision issuing sanctions to be upheld, the attorney must be provided the statute or law that he is at risk for being sanctioned. *See Ted Lapidus, S.A.* v. Vann, 112 F.3d 91, 97 (overturning sanctions because the attorney was not notified that he was at risk for sanctions under Rule 11); *see also Mantell v. Chassman*, 512 Fed. Appx 21, 24-25 (2d Cir. 2013 (vacating an award of sanctions under 28 U.S.C. § 1927 because the attorney was not warned that sanctions could be imposed under that statute). Here, as I was not provided notice of the authority under which this Court may issue sanctions, it is respectfully submitted that sanctions should not be imposed.

### B. Sanctions are not Warranted for Plaintiffs' Findings of Fact and Conclusions of Law

The basis for the Court's order that I show cause (with respect to the Findings of Fact and Conclusions of Law) was that they were too short, lacked a single citation and were "utterly useless to the Court in terms of trial preparation." *See* dkt 121. In other words, the Court found my work product insufficient. Poor work product, though, is not grounds for sanctions. *See Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 109 (2nd Cir. 2013) (holding that the District Court incorrectly couched its conclusions in terms of what 'any competent' attorney would have done and extensively discussed Agola's (the attorney's) admittedly incompetent practice in other areas).

Furthermore, sanctions should not be issued under Rule 16. This is because the Court did not explicitly require a page minimum, did not explicitly order that the parties cite case law and did not explicitly order that the Findings of Fact and Conclusions of Law be "detailed." Rather, the Court stated that the Findings of Fact "should" be detailed, that they "should" include citations and that the Proposed Conclusions of Law "shall" include all law that the parties wish to submit to the Court. With respect to the Court's requirements using the word "shall," in my

Conclusions of Law I cited the Wage Theft Prevention Act, New York Labor Law and the Fair Labor Standards Act.

With respect to the Court's criticism based upon what counsel "should" do, sanctions should not be ordered under Rule 16. *See Ashlodge, Ltd. v. Hauser,* 163 F.3d 681, 683 (2nd Cir. 1998) (overturning sanctions because the letter from the Court used the word "should" instead of "shall") and holding that the word "should" has a different connotation that the word "must" or "shall"). Furthermore, for the reasons previously set forth herein, these submissions were adequate. *See* pp. 6-7, supra. *Compare Ortiz v. City of New York*, 2014 U.S. Dist. LEXIS 226 (S.D.N.Y. Jan. 2, 2014) (this Court sanctioning *pro se* Plaintiff for not abiding by the Court's specific orders not to record the proceedings).

The Findings of Fact and Conclusions of Law could have been of a higher quality. However, I ask that the Court look at the "full picture" and note that Plaintiffs received a favorable settlement. The Findings of Facts and Conclusions of Law, along with the prior litigation history of Defendants that I obtained through my own research, were sufficient to demonstrate that the individual Defendants were the Plaintiffs' individual employers and that a wage and hour violation had occurred.

In addition, after the Court voiced displeasure that I did not case law in my Findings of Fact and Conclusions of Law, I (as requested by the Court) cited case law in my subsequent motions. *See* p. 7, supra. I have also, as required by the Court, cited case law in this response. As I have consistently corrected this deficiency once the Court expressed its displeasure, sanctions should not be imposed.

Sanctions are also not appropriate under Rule 16 for three reasons. First, I was never late or missed a court conference. Second, after the Court made it clear that any future deadlines missed would result in sanctions, all of my submissions were timely filed. *See* p. 6, supra. Third, my work product did not result in my adversaries having to expend unnecessary time and energy. Generally speaking, courts only sanction under Rule 16 when a party misses a court appearance or, after receiving a warning by the Court, continues to fail to meet deadlines. *See Petrisch v. JP Morgan Chase*, 789 F. Supp.2d 437, 455 (S.D.N.Y. 2011) (sanctions were issued against an attorney because he did not appear at the scheduled conference, thus showing an "unwillingness to follow Court's orders [and] wast[ing] the time of both the Court and Defendants).

For similar reasons, the Court should not impose sanctions for the direct testimony affidavits filed. The Court in its order stated that the parties shall "file affidavits constituting the direct testimony of each trial witness." *See* dkt 80. I did just that by submitting affidavits that I believed would enable my clients to establish a *prima facie* case. Ultimately, because Plaintiff Anderson had ceased communicating with this office, I had to make a judgment call. In making this judgment call, I recalled that I had prior success using similar declarations in the *Aguaysa* matter (which was also a FLSA case where my clients did not receive any documentation from Defendants). I also made the decision that I should use these declarations because depositions had not taken place.

### C. Sanctions *Sua Sponte* under Rule 11 Should not be Issued

At no point did the Court state that either the Findings of Facts and Conclusions of Law were not in compliance with the Court's Order. Rather, as noted in the Court's order to show cause, they were in the Court's view "patently inadequate" and "utterly useless" (dkt 121). The Court, though, barred me from correcting these documents (dkt 93). *Compare Ashlodge, Ltd. v. Hauser*, 163 F.3d 681 (2nd Cir. 1998) (prior to issuing sanctions, the Court gave the offending attorney an opportunity to correct the deficiencies in his pre-trial submissions).

As a result, the Court should not issue sanctions under Rule 11 *sua sponte* as the Court has not claimed that these filings were made in subjective bad faith. It is well settled that the "court cannot impose sanctions *after* a party is no longer able to withdraw or amend the potentially offending pleading unless the court makes a finding of subjective bad faith." *See NXIVM Corp. v. Foley*, 2015 U.S. Dist. LEXIS 161410, at *11 (N.D.N.Y Dec. 2, 2015) *citing In re Pennie & Edmons LLP*, 323, F.3d 86, 91 (2d Cir. 2003).

The pre-trial filings, as incompetent as the Court may have believed them to be, did not fall within the spectrum of bad faith. Bad faith is defined as ranging from "overly dishonest or contemptuous behavior, down to those where the court regarded an argument as frivolous." *See Cardona v. Mohabir*, No. 14-cv-1596 (PKC), 2014 U.S. Dist. LEXIS 62637, at *3 (S.D.N.Y. May 6, 2014) (*internal quotation omitted*). More recently, courts in the Second Circuit have "clarified" that the subjective bad faith standard, with respect to *sua sponte* Rule 11 sanctions, requires the attorney "to have *actual knowledge* that a pleading or argument that he or she is advancing is frivolous." *See Braun v. Zhiguo Fu,* 2015 US. Dist. LEXIS 90652, at **39-40 (S.D.N.Y. JUNE 19, 2015) (emphasis in original).

Here, at no point, though, did the Court claim (or imply) that the pre-trial findings submitted by me were "frivolous." To reach the level of frivolous "there must be either direct or circumstantial evidence that counsel knew that the argument was without merit.". *See In re Gushlak*, 2012 U.S. Dist. LEXIS 91690, at *8 (E.D.N.Y July 2, 2012); *see also Rankin v. City of Niagara Falls, Dept of Public Works*, 569 Fed. Appx. 25 (2d Cir. 2014) (Summary Order) (subjective bad faith found when an attorney intentionally misled a magistrate judge) *see also SEC v. Smith*, 798 F.Supp.2d 412, 426 (N.D.N.Y. 2011) (imposing sanctions on a party for intentionally misrepresenting her financial interest in a trust).

The Court's unhappiness with the pre-trial filings appears, at most, to fall within the spectrum of "negligent conduct" in my representation of Plaintiffs. And, as noted by Judge McMahon in *Braun* v. Zhiguo Fu, 2015 U.S. Dist. LEXIS 90652 at **41-42 (S.D.N.Y. June 19, 2015), this is not a basis for sanctions.

### D. Amended Complaints

Until the Court issued its Order to Show Cause, at no point did the Court ever express displeasure with my filings of the amended complaints. As discussed in the fact section, each filing of the amended complaints was made in good faith and did not cause any delay in these

proceedings. Indeed, Defendants did not even oppose Plaintiffs' request to file the third amended complaint.

### E. As the Court Already Informed Counsel that He Would Not be Sanctioned for Missing Deadlines by a Single Day, it is Unfair to Sanction Him Now

The Court previously stated that it would not sanction me for missing the pre-trial deadlines by one day (dkt 93). It would be unjust for the Court to reverse itself and order sanctions against me for missing the deadlines after previously holding that I would not be sanctioned. I ask that the Court note that *all* subsequent submissions were timely filed. Generally speaking, Courts first issue a warning to an attorney with respect to meeting Court deadlines prior to issuing sanctions. For example, in *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363 (E.D.N.Y. 2013) the attorney was guilty of violating numerous scheduling and pre-trial orders; his actions caused his adversaries multiple delays. After receiving multiple warnings by the Court, the attorney was then sanctioned. Likewise, in *Martin v. Giordano*, 2016 U.S. Dist. LEXIS 110108, at **24-25 (E.D.N.Y. Aug. 18, 2016), the Court first warned the attorney on record that if he failed to comply with the Court orders that he would be at risk for sanctions. *See also Gurvey v. Cowan, Liebowitz & Lathman, P.C.*, 2014 U.S. Dist. LEXIS 25191 at *20 (S.D.N.Y. Feb. 25, 2014) ("Also weighing in favor of sanctions is the fact that plaintiff's noncompliance has lasted for months and is still ongoing.")

### CONCLUSION

I ask that the Court not put a permanent scar on my record. I corrected my work when put on notice by the Court. I have taken steps to ensure that this type of situation never occurs again. Lastly, I ask that the Court note that at no point (as reflected by the Court's Order to Show Cause (dkt 121)) did I engage in any actions to mislead the Court or my adversaries.

Dated:   August 28, 2017
         New York, New York

                                                        Respectfully,

                                                        */s/ Jacob Aronauer*
                                                        Jacob Aronauer
                                                        *Attorney for Plaintiffs*